■ ESTATE OF FRANCES HATCH, by THEODORE M. RUZOW et al., as Coexecutors, et al., Respondents-Appellants, v NYCO MINERALS, INC., Appellant-Respondent. [704 NYS2d 340] —Carpinello, J. (1) Appeal from that part of an order of the Supreme Court (Viscardi, J.), entered November 18, 1998 in Essex County, which granted plaintiffs' motion for summary judgment dismissing defendant's counterclaim, and (2) cross appeals from a judgment of said court, entered January 25, 1999 in Essex County, which, *inter alia*, awarded costs and disbursements to plaintiffs.

This matter involves a dispute over defendant's obligation to continue to pay royalties to plaintiffs in connection with its mining activities in Essex County. The action was previously before this Court on an appeal from the denial of defendant's motion for summary judgment seeking dismissal of plaintiffs' complaint. On that occasion, our review of the operative agreements executed by the parties' predecessors in interest compelled the conclusion that defendant was entitled to judgment in its favor (245 AD2d 746). Succinctly, we held that defendant's

obligation to pay a mineral royalty was limited to specifically identified lands known as the Willsboro Mine. Notwithstanding the fact that it had closed this mine in 1982 and simultaneously opened another mine approximately 10 miles away, defendant continued to make royalty payments to plaintiffs until 1994. The cessation of these payments prompted plaintiffs to file suit to compel their reinstatement. In dismissing plaintiffs' complaint, we found that the agreements at issue unambiguously limited the payment of royalties to minerals removed from the Willsboro Mine only (*see, id.*, at 748).

After our determination, plaintiffs moved to dismiss defendant's counterclaim which sought return of the $413,603 in royalties paid "by mistake" between 1982 and 1994. Supreme Court granted the motion finding that defendant had displayed a lack of diligence in determining its contractual rights, prompting this appeal. Both parties also appeal from Supreme Court's assessment of $1,750.92 in costs to plaintiffs and $1,818.20 in costs to defendant. We affirm in all respects.

We begin by accepting as true all of defendant's factual allegations. Even so doing, it is abundantly clear that defendant's former president, who ran the mines for 30 years, had communicated to defendant's lawyers, accountants and parent company as early as 1979, and again in 1982, "that there was reason to believe" that the royalties owed to plaintiffs were "tied only to the Willsboro Mine". Notwithstanding these notifications, his superiors decided to defer any inquiry into the matter and to "examine that" issue at a later date. Based on these facts, defendant now argues that it made royalty payments for some 12 years "by mistake", until a new chief financial officer reviewed the relevant documents in 1994 and realized that defendant had no legal obligation to make the royalty payments.

Defendant contends that this is a case of "money paid by mistake" (*Banque Worms v BankAmerica Intl.*, 77 NY2d 362, 366). We disagree. It is clear that defendant deliberately assumed the risk that it might be mistaken in its understanding of its contractual obligations. Said differently, one who is aware that his or her understanding of a legal obligation may be erroneous can hardly be characterized as truly *mistaken* when he or she intentionally proceeds without further investigation of his or her rights. Under these circumstances, there is in reality no mistake but rather "conscious ignorance" (Restatement [Second] of Contracts § 154).

In our view, the uncontested facts at issue in this case are even stronger than those of *Gimbel Bros. v Brook Shopping*

*Ctrs.* (118 AD2d 532), appropriately relied upon by Supreme Court as a basis for dismissal of the counterclaim. In that case, which involved a rent dispute and the rights of the parties under a written lease, the plaintiff was found to have "displayed a marked lack of diligence in determining what its contractual rights were, and [was] therefore not entitled to the equitable relief of restitution" (*id.*, at 536). Here, defendant was on notice that its understanding of its contractual obligations may have been erroneous, yet chose not to investigate and continued making payments to plaintiffs. Accordingly, we find that Supreme Court's determination dismissing defendant's counterclaim was entirely appropriate. As a final matter, we are unable to conclude that Supreme Court abused its discretion in any regard in its assessment of costs (*see, Gabrelian v Gabrelian*, 108 AD2d 445, 446, *appeal dismissed* 66 NY2d 741; *see also*, 14 Weinstein-Korn-Miller, NY Civ Prac ¶ 8101.18).

Mercure, J. P., Spain, Graffeo and Mugglin, JJ., concur. Ordered that the order and judgment are affirmed, without costs.